THOMPSON *v.* ARMSTRONG CORK COMPANY, et al.

No. 40454          April 1, 1957          93 So. 2d 831

*Pyles & Tucker*, Jackson, for appellant.

*Young & Daniel,* Jackson, for appellees.

734

Roberds, P. J.

This is a Workmen's Compensation case. On April 30, 1953, Thompson, the appellant, was an employee of Armstrong Cork Company. He claims that on that day he suffered a compensable injury while performing manual labor as a servant of Armstrong. The various tribunals which have passed upon his injury have determined he suffered a strain of the muscles in his back. Examination made after the injury occurred disclosed that he also had a condition described medically as "congenital spondylolisthesis." In layman's language this

means a condition resulting from a displacement of the fifth lumbar vertebra in the backbone. The displacement was forward about one-fourth of an inch. Thompson has been paid $1,750 as compensation for temporary injury to the back muscles, and the evidence shows that he had entirely recovered from the muscle strain in October 1954. In other words, he has received all of the compensation due him for the muscle injury. However, he claims that the backbone injury was also the result of his exertion in lifting heavy objects on April 30, 1953, and he should be paid compensation for that injury. His main contention on this appeal is that we should reverse the various lower tribunals in their findings of fact that the backbone condition was not the result of his exertion on April 30, 1953, and that such condition did not aggravate or light up the muscular injury.

We have many times held that where the findings of the Commission on disputed questions of fact are supported by substantial evidence we will not reverse such findings. American Surety Company v. Cooper, 222 Miss. 429, 76 So. 2d 254, and numerous cases decided prior and subsequent to the cited case. In California Eastern Airways, Inc., et al. v. Neal, 228 Miss. 370, 87 So. 2d 895, the rule was stated in this language: "At the outset, we are confronted with two general legal propositions: i. e., that the burden was upon Neal to prove he suffered a compensable injury; and that we will not reverse the findings of fact by the attorney-referee and Commission if there is substantial evidence to support them, or, stated differently, that we will not so reverse, unless such findings are manifestly against the weight of the evidence. The cases so holding are so numerous that we need not consume space and time to recite them."

The attorney-referee, the full Commission and the circuit court have each twice adjudicated the stated

question against the contention of claimant. In other words, claimant has had six judicial hearings, and all have adjudicated adversely to his contention. .

We deem it unnecessary to detail the testimony. We will mention enough to show that the findings were supported by substantial evidence.

There were two hearings before the attorney-referee, —July 21, 1953, and November 12, 1954. Dr. George D. Purvis of Jackson, Mississippi, was the principal witness at both hearings. At the first hearings he was introduced by claimant; at the second hearing he was placed on the stand by the employer and its carrier, the appellees here. Indeed, his was the only medical testimony given at the hearings. It was agreed that he was a qualified orthopedic surgeon and specialist. He examined Thompson three different times, —May 15th and 29th 1953, and October 8, 1954. These examinations embraced his own personal examination, X-rays, and the case history given him by Thompson. His testimony, in its main substance was, that Thompson suffered a muscle strain from his physical exertion, which was temporary, and which had, as a matter of fact, entirely disappeared October 8, 1954; that Thompson's exertion did not bring about, or adversely affect, the congenital spondylolisthesis condition. He said "The spondylolisthesis, within itself, was not aggravated or affected by the strain"; that this vertebrae condition, in the absence of severe trauma, which did not exist here, usually starts at birth or in childhood and becomes progressively worse. It occurs during the development stage of the vertebrae. It usually occurs over a long period of time. He repeated a number of times the statement that the vertebrae condition did not produce, aggravate or light up the muscular strain condition, in other words, did not contribute in any manner to the disabling condition of Thompson. He said the remedy for the vertebrae displacement

trouble was an operation. Usually such operations remedy the trouble. He said without the operation the vertebrae condition would get worse. He explained that to Thompson, recommending the operation, informing Thompson that the expense and charges incurred in the operation would be paid by an insurance company which had illness and accident coverage on Thompson not connected with his work. Thompson agreed to the operation. He, the witness, made room reservations and arrangements for the operation at the Baptist Hospital at Jackson, Mississippi, but Thompson did not appear for the operation, and later declined to undergo it.

■■ ■ We could detail much more of the testimony supporting the conclusions reached by the attorney-referee, the Commission and the circuit judge, each passing upon the questions twice, but we think this is sufficient to show that these tribunals had substantial evidence to support their conclusions.

We deem it our duty to specifically respond to one other contention made by able counsel for Thompson. As stated, there were two hearings before the attorney-referee, at both of which testimony was taken. The hearings were some sixteen months apart. At the first hearing Thompson introduced Dr. Purvis and two other witnesses and testified himself. Contestants introduced one witness. Letters and reports were also placed in evidence. On the second hearing the entire record of the first trial was introduced by agreement. In addition to that, Thompson introduced one witness and testified himself. Contestants offered one witness. At the second hearing contestants put their testimony on first. After claimant had placed his last witness on the stand his counsel announced that they had no other witness at the time ''but we would like for this hearing to be kept open for the possibility of introducing further medical testimony * * * We would like to have this thing continued

until further hearing.'' It appears the medical testimony counsel had in mind was that which might be given by Dr. Cavett, because the attorney-referee inquired if Dr. Cavett, who resides in Jackson, Mississippi, could be procured, to which inquiry counsel for claimant replied he did not know. Counsel then said he had understood the inquiry at the second hearing would be limited to a determination of the question whether or not claimant's muscle strain had entirely subsided. The attorney-referee then recessed the hearing until November 19, 1954. The record discloses that neither claimant nor his counsel appeared for the adjourned hearing on that date, and the matter was again reset for November 20th. Counsel for contestants appeared but neither claimant nor his counsel appeared for that hearing. Counsel for contestants then moved the attorney-referee to close the hearings, and for grounds in support of the motion stated into the record these pertinent facts: that on October 26, 1954, the Commission mailed registered notice to counsel for the parties to this litigation, informing them a second hearing would be had in this cause November 12, 1954; that the parties and their counsel appeared at that hearing; that both offered testimony and counsel for claimant then made the announcement that he might wish to offer other medical testimony, as above shown; and that on November 15, 1954, the attorney-referee wrote counsel for the parties that he was resetting this cause for hearing on November 19, 1954, ''for the purpose of completing the testimony in same.'' He further said ''I am anxious to conclude this matter.'' Neither claimant nor his counsel appeared at the appointed time and place. Counsel for contestants did appear. The hearing was then postponed to nine o'clock A. M., November 20th. Counsel for contestants appeared but neither claimant nor his counsel appeared. It was then stated that contestants had paid full compensation

to claimant through November 19, 1954; whereupon contestants moved the attorney-referee to close the hearing, which motion was sustained.

It will be seen that claimant made no showing that the witness or witnesses he desired had been subpoenaed or could be produced as witnesses, or that any effort had been made to produce them, nor was any showing made as to what they would testify, if present. In addition, opportunity to introduce further testimony was given by resetting the hearings as above shown. Notice of the attorney-referee to counsel did not limit testimony to the muscular strain. The notice said the hearing would be for the purpose of "completing the testimony" and "concluding the matter", giving the number of the cause, in which proceeding was involved both questions—whether the muscular strain had subsided and the right to compensation resulting from the vertebrae condition of the backbone. In addition, testimony was taken by both parties on the backbone condition without any objection that such condition was not properly a subject of inquiry and determination. Questions of postponement and reopening of hearings, and continuing causes, are matters largely within the discretion of the trial tribunal. Actions of such tribunals in these matters will not be disturbed unless clearly not justified under the circumstances and parties have unjustly suffered material injury as a result thereof. No such condition confronts us here. The attorney-referee committed no error by bringing this proceeding to an end.

We have examined the other contentions made by Thompson but find them not well taken.

Affirmed.

*Hall, Kyle, Arrington* and *Gillespie,* JJ., concur.